UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADRIAN THOMPSON | Case No. 25-CR-31 (BAH) |

**DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE**

Mr. Adrian Thompson, through undersigned counsel, respectfully requests this Honorable Court to suppress the use as evidence at trial of all tangible objects seized from a 2019 Audi Q8 on June 1, 2024, because the search of the car was in violation of Mr. Thompson's rights under the Fourth Amendment to the United States Constitution. Mr. Thompson requests an evidentiary hearing on this motion at the earliest opportunity, as the outcome of that hearing may be dispositive in this case.

**STATEMENT OF FACTS**

On June 1, 2024, around 11:18 pm, MPD officers Sergeant Scott Possinger and Investigator Wilfredo Guzman were patrolling the Clay Terrace neighborhood of Washington, D.C. They observed a parked, dark-colored Audi Q8 parked in a parking area of the apartment complex located at 314 53rd Street NE. As captured on surveillance camera footage, an individual (Dion Dempsey) exited the driver's side of the Audi, followed shortly by Mr. Thompson, who had been seated in the passenger's seat. Both Dempsey and Mr. Thompson proceeded to walk away from the Audi.

1

Immediately thereafter, Sergeant Possinger and Investigator Guzman turned into the same parking lot.

Sergeant Possinger and Investigator Guzman parked directly in front of the Audi, blocking the car from the front (Figure 1). Sergeant Possinger began to look inside the windows of the vehicle using his flashlight, starting with the front passenger-side window and then the rear-passenger side window. Investigator Guzman began peering through the driver's side windows, at which point Sergeant Possinger joined him. Investigator Guzman asked if he could search inside the car.



Figure 1 (Surveillance photo showing Sergeant Possinger searching passenger side)

Sergeant Possinger then proceeded to look inside the driver's side window, which was partially open (Figure 2), inserting his flashlight through the window of the car and leaning into the car through the open window. Surveillance footage shows Sergeant Possinger's hand, hat, and part of his nose, along with his flashlight, inside

the Audi (Figure 3a and 3b). During that search, at approximately 23:19:15, Sergeant Possinger stated that there was a "bunch of weed" in the car.



Figure 2 (BWC showing driver's side window open before Sergeant Possinger approaches to look inside)



Figure 3a (Sergeant Possinger searching inside the car)

3



Figure 3b (Enlarged surveillance photo showing Sergeant Possinger's hand, flashlight, hat, and nose inside car window)

Thereafter, Sergeant Possinger told Dempsey that because of the amount of marijuana in the car, Sergeant Possinger was going to search the car. (BWC at 23:19:43). Before starting the search, Sergeant Possinger radioed Investigator Guzman, stating "Hey Guz, it's gonna be in here." (23:20:10). During the search, Sergeant Possinger observed Dempsey, the driver of the car, fleeing on foot, at which point Sergeant Possinger stated, "He's running. It's gonna be in there." (BWC 23:20:19). Investigator Guzman stated, "there's a gun." (BWC 23:20:24). After searching the driver's side area, Sergeant Possinger stated, "I don't see it. I don't see it." (BWC 23:20:30). Investigator Guzman told him to check the "other side." (BWC 23:20:31). Climbing across the console, Sergeant Possinger exclaimed "1-800," the

4

code for gun recovery. (BWC 23:20:34). Sergeant Possinger then told Investigator Guzman that "the second suspect was in the passenger seat" and called for backup, explaining that he "needed one more unit up here, I can't hold the gun by myself." (BWC 23:20:42-23:20:53). Mr. Thompson, who had been conversing with friends nearby during the search, was placed in handcuffs. A gun was recovered from the Audi's glove box.

## APPLICABLE LEGAL STANDARDS

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so." *New York v. Belton*, 453 U.S. 454, 457 (1981). As the Supreme Court has repeatedly held, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see also United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005).

The evidence at issue here was seized following the warrantless search of the Audi. Where the government seeks to introduce evidence seized without a warrant, it has the burden of showing that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement. *Coolidge v.*

5

*New Hampshire*, 403 U.S. 443, 455 (1971); *Katz*, 389 U.S. at 357 (1967); *Jackson*, 415 F.3d at 92 (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)); *United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016); *Rouse v. United States*, 359 F.2d 1014, 1016 (D.C. Cir. 1966) ("[T]he police[] . . . have the burden of showing that a warrantless arrest was valid."); Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(b) (4th ed. 2004) ("if the police acted without a warrant the burden of proof is on the prosecution"). Because the government cannot meet its burden here, the evidence should be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

The defense has no burden to anticipate potential government arguments and rebut them, and Mr. Thompson reserves the right to respond to any evidence and arguments submitted by the government in an effort to meet its burden in this matter. Counsel nonetheless notes that the government likely will argue that the Sergeant Possinger had probable cause based on the presence of the marijuana in "plain view" on the floorboard of the car to search the remainder of the vehicle. Sergeant Possinger only saw the marijuana on the floorboard, however, when he unlawfully broke the plane of the car with his flashlight, hand, and face. Moreover, on the facts of this case, the possession of a quantity of marijuana beyond the legal limit was a self-contained offense that did not provide justification for a further search of the car.

**ARGUMENT**

6

I. **Sergeant Possinger Unlawfully Intruded into the Interior of the Car During his Search.**

The interior of a car is subject to Fourth Amendment protection from unreasonable intrusions by the police. *New York v. Class*, 475 U.S. 106, 106 (1986). The officers were therefore required to have cause to search the interior of the Audi. But the officers lacked such cause until they discovered the bag of marijuana on the floorboard of the driver's side—a discovery made only when Sergeant Possinger leaned his body and flashlight through the open window of the car. That intrusion—which "broke the plane" of the car—was unlawful.

The Supreme Court has specifically set forth the requirements for application of the plain view doctrine: "[1] if police are lawfully in a position from which they view an object, [2] if its incriminating character is immediately apparent and [3] if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136-37 (1990). Here, as explained below, Officer Possinger *did* violate the Fourth Amendment to get to the spot where he viewed the gun by intruding into and trespassing onto private property. As a result, the plain view exception does not apply.

***Intrusion.*** The D.C. Circuit in *United States v. Powell*, 483 F.3d 836, 838 (D.C. Cir. 2007) confirmed that the "plain view" exception to the Fourth Amendment's

7

warrant requirement cannot be satisfied when an officer sees suspicious activity only "after he ha[s] 'physically' entered the vehicle 'with his body.'" *Id.* at 838. There, the officer has "lean[ed] his head into the vehicle" and only then saw and smelled alcohol from an open container. *Id.* The Court concluded that the officer's "search, and his consequent discovery of the gun and ammunition in the backpack [in the car], . . . cannot be justified on the ground that the open containers of alcohol were in plain view," because "'a search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact.'" *Id.* (quoting *United States v. Spinner*, 475 F.3d 356, 359 n. * (D.C. Cir. 2007) (citations omitted)). Similarly, in *United States v. Ngumezi*, 980 F.3d 1285, 1289 (9th Cir. 2020), the officer "entered the interior space of the vehicle when he leaned in across the plane of the door." *Id.* The Ninth Circuit found that entry to be unlawful under the Fourth Amendment. *Id.*; *see also United States v. Montes-Ramos*, 347 F. App'x 383, 389–90 (10th Cir. 2009) (concluding that officer's investigative intrusion into "vehicle's air space, even if by only a few inches" constituted "search").

Similarly, here, Sergeant Possinger and Investigation Guzman were actively attempting to see the interior of the car through the car windows (without articulable suspicion of any wrongdoing) *before* Sergeant Possinger leaned through the open window. Investigator Guzman even asked why he could not search within the car. Sergeant Possinger, however, did not see the Ziploc of marijuana until he leaned his flashlight, hand, hat, and part of his face body *through the open window* of the car in order to see what was inside, as depicted below. As several Supreme Court decisions

8

have confirmed, that physical intrusion is constitutionally significant: "When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)); *see Jones*, 565 U.S. at 408 n.5 (explaining that a physical intrusion "conjoined with ... an attempt to find something or to obtain information" constitutes a search). The plain view exception therefore cannot justify the search of the interior of the car, the discovery of the marijuana, and the resulting search of the interior of the car. *Wong Sun*, 371 U.S. at 488 (suppressing evidence obtained through the exploitation of a Fourth Amendment violation).



9

***Trespass.*** As Sergeant Possinger leaned into the open window, he also made physical contact with the car, which constitutes an unlawful physical trespass onto private property because he undertook these actions in "'an attempt to find something or obtain information.'" *United States v. Richmond*, 915 F.3d 352, 357 (5th Cir. 2019) (quoting *Jones*, 565 U.S. at 408 n.5). When an officer touches the exterior of a vehicle "in order to help find out what was inside," such physical touching goes beyond "incidental conduct" and triggers Fourth Amendment protections. *Id.* Sergeant Possinger leaned against and into the car for the purpose of examining the interior of the car. That physical touching of the vehicle with the purpose of gaining information was a search for Fourth Amendment purposes. *See also Richmond* 915 F.3d at 357-58 (holding that the "relatively minor" act of an officer pushing his finger against the tire of a vehicle was a search protected by the Fourth Amendment because "he touched the tire in order to find out what was inside").

Because Sergeant Possinger's leaning into and onto the car for purposes of investigation constituted an unlawful search that failed to meet any exception to the Fourth Amendment's protections, this Court must suppress any evidence obtained as a "'direct result of an illegal search or seizure,' " as well as "'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). As explained *supra*, Sergeant Possinger did not see the marijuana until he was leaning into the car. He did not retrieve the firearm from the glove compartment, or find any other evidence, until after he had opened the car to

search it following his sighting of the marijuana. Because Sergeant Possinger was not "lawfully in a position from which [he] view[ed] the [marijuana]" and thus had no cause to open the car and conduct a more fulsome search, all tangible evidence obtained from the car must be suppressed. *Dickerson*, 508 U.S. at 375; *Wong Sun*, 371 U.S. at 488.

## II. The Search of the Interior of the Car Was Not Justified Based on the Quantity of Marijuana Because that Offense was Self-Contained.

The warrantless search of a lawfully stopped car is constitutional if the search is based on probable cause. *United States v. Ross*, 456 U.S. 798, 823 (1982). Courts are in general agreement that that "officers have the required probable cause when they detect the odor of illegal marijuana coming from the vehicle." *United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022); *United States v. Jackson*, 103 F.4th 483, 488 (7th Cir. 2024). But no such authority exists in a post-legalization world simply based on a small quantity of marijuana that appears to be packaged for personal use, when no smell indicates that the marijuana had been used and no other evidence suggests the marijuana was being actively consumed or distributed.

In this sense, the circumstances of this case appear similar to *United States v. Freeman*, Case No. 25-127 (2025), in which this Court granted a motion to suppress where officers continued their search of the car following their discovery of an open container of what the government said was alcohol in the car. This Court clarified that "there was no suggestion that defendant or the other two men were intoxicated, smelled of alcohol, [or that] the car smelled of alcohol." *Freeman* Suppression Tr. at

11

39 (attached as Exhibit A). This Court further rejected the government's argument that "there was probable cause to believe that a search would yield further evidence of the defendant's illegal possession of an open container of alcohol," *id.* at 40–41, because there were no "facts of intoxication – alcohol smell, spilled alcohol [],]," or "furtive movements" to suggest that the police needed to continue to search for the source of the liquid or additional contraband. *Id.* at 43, 46. In other words, since officers "had already identified the bottle" they had no reason to suspect "that other open containers of alcohol were in the car." *Id.* at 46. This Court thus classified the POCA offense in *Freeman* as a "self-contained" offense, stating:

> Without any specific and articulable facts which would warrant the conclusion that additional open containers of alcohol might be found in the rest of the car, no probable cause existed to believe that additional open containers would be found in the defendant's vehicle after the officers identified the open alcohol container in the front passenger seat.

*Id.* at 47, 50. The officers' subsequent search of the backpack on the floor of the driver's seat was therefore unreasonable and overbroad. *Id.* at 50.

Likewise, here, Sergeant Possinger discovered a Ziploc of marijuana on the driver's side floorboard. Neither the packaging nor the quantity of marijuana appeared significantly different than a legal amount used for personal use. In other words, nothing about the appearance of the marijuana suggested it was intended for unlawful distribution, or that additional contraband would be present in the car.

| Two ounces of marijuana (legal limit)[1] | Bag of marijuana at floor of driver's seat of Audi |
|---|---|
|  |  |

Further, there was no smell, scattered marijuana, burnt marijuana residue, or furtive movements that suggested a need to continue searching the car for contraband. To the contrary, it seems that by the officers' actions—i.e., immediately pulling in to search through the windows of the unoccupied car, Investigator Guzman's asking to "search it" before any marijuana was seen, and Sergeant Possinger's repeated statements that "it's gonna be in here"—that the officers were never actually looking for additional marijuana when they opened the car, but were all along acting upon a "hunch" as to the presence of a firearm inside the car.

It is well established, however, "[t]he officer[s'] assessment of the likelihood that there will be relevant evidence inside the car must be based on more than a *mere hunch*." *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) (emphasis added) (cleaned up). Mere possession of marijuana cannot serve as a pretext for a wholesale search of a car absent articulable suspicion. *Freeman* Suppression Tr. at 47 ("[u]se of

---

[1] Photo taken from Joe Coscarelli, *This is What Two Ounces of Weed Looks Like*, N.Y. MAGAZINE (July 9, 2014), *available at* https://nymag.com/intelligencer/2014/07/this-is-what-2-ounces-of-weed-looks-like.html (two ounces of weed "is not a small amount of weed").

13

open container laws" cannot serve as excuse to "conduct willy-nilly complete searches of cars"). Thus, even if the officers did not unlawfully intrude into the vehicle, their continued search of the car following their discovery of the marijuana lacked any specific or articulable suspicion. That search was therefore unlawful, and the tangible evidence obtained from that further search of the car must be suppressed. *Wong Sun*, 371 U.S. at 488.

## Conclusion

Wherefore, for the foregoing reasons, and such other reasons as may be presented at a hearing on this matter, Mr. Thompson respectfully submits that the use as evidence of all items obtained from the car must be suppressed.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____/s/_____
MICHELLE PETERSON
ISRA BHATTY
Assistant Federal Public Defender
Federal Public Defender's Office
625 Indiana Ave NW, Suite 550
Washington, D.C., 20004