**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ADRIAN THOMPSON** | **Case No. 25-CR-31 (BAH)** |

**DEFENDANT'S SUR-REPLY IN SUPPORT OF DISMISSAL WITH PREJUDICE**

Adrian Thompson respectfully submits this Sur-Reply in support of his request for dismissal of the indictment with prejudice. The government's Reply in Support of Its Motion to Dismiss Indictment Without Prejudice (ECF 71) addresses the merits of the dismissal with-versus-without prejudice distinction for the first time, but its novel legal arguments obfuscate the law and misstate the facts of this case. At bottom, the government's Reply ignores Mr. Thompson's central argument: that Rule 48(a) exists to prevent the government from obtaining a strategic advantage from dismissal and re-prosecution that it seeks here—one that avoids the disadvantages created by its own failures and results in objective harassment. The law does not demand the "scheme" the government insists on, nor would such a requirement for dismissal with prejudice make sense. Both the government's actions in this case and its purpose in seeking dismissal without prejudice demand dismissal with prejudice.

## I. THE GOVERNMENT'S SUMMARY OF FACTS IGNORES THIS COURT'S PRIOR FINDINGS ON THE GOVERNMENT'S OWN ROLE IN CREATING ITS PRESENT PROSECUTORIAL PREDICAMENT.

In its summary of the facts of this case, the government paints itself as a passive victim of "a series of incidents in a different case involving Officer 1," which "undercut an orderly presentation of the evidence" and caused "the United States [to be] unable to sponsor Officer 1 as a witness at trial." Gov't Reply (ECF 71) at 2. The government, however, strikingly ignores the findings that this Court itself made at the July 10, 2026 pre-trial conference, which extensively outlined the government's *own role* in creating its need to delay prosecution. These findings include the following:

1) The government failed to diligently prepare for trial, including by failing to request and provide chain of custody information until about a month before trial and (under the "best look" for the government) waiting three weeks between discovering the Officer 1 issue and issuing a new buccal swab warrant, Hr'g Tr. at 16;
2) The government was aware since September 2025 of its inability to sponsor Officer 1 as a witness but did not alert the defense or the Court to that information until less than a month before the scheduled trial date, thereby exhibiting a lack of diligent preparation, Hr'g Tr. at 27;
3) Beyond dilatory preparation, the government systemically failed to identify and disclose *Brady* information, repeatedly failed to provide discovery[1], and failed to timely identify and remedy its chain-of-custody witness problem in a known DNA case, Hr'g Tr. at 80–81.

[1] The government claims that it is "not aware of any outstanding reports prepared by Officer 1" and claims to have "disclosed . . . the full DFS discovery file and other property and/or evidence reports related to this case," Reply at 2 n.1, but undersigned counsel notes that the following evidentiary and *Brady* items were never provided by the government despite repeated requests: reports from buccal and firearm swabs, additional barcodes and MPD chain of custody documentation, inventory from vehicle tow, contact information for Officer 1, MPD investigative reports related to an investigation of Officer 1, any potentially false statements made by Officer 1, communications between Officer 1 and the government,

4) The government was not claiming it could not locate Officer 1 or that Officer 1 was "unavailable" under 18 U.S.C. § 3161(h)(3), but that the government wished to not call Officer 1 as a witness for "strategic reasons" (indeed the lead AUSA admitted making no attempt to contact Officer 1 as a potential witness), Hr'g Tr. at 84;
5) The government's lead attorney's double-booking problem was also a challenge of the government's making, Hr'g Tr. at 71;
6) The government's lack of diligence and the inability to sponsor Officer 1 did not entitle the government to an ends-of-justice exemption under the Speedy Trial Act, Hr'g Tr. at 42–43;
7) Continuing trial would cause significant prejudice to Mr. Thompson; Hr'g Tr. at 87.

Thus, this Court concluded that the fact the government found it "too late" to obtain new swabs and DNA testing was entirely the government's own fault, and, for that reason, the government was not entitled to continue trial in order to situate itself in a more strategically sound position at the expense of the defendant's speedy trial rights. Hr'g Tr. at 42–43. Those findings, which the government ignores, bear directly on the Court's resolution of the instant motion.

## II. MR. THOMPSON DOES NOT NEED TO SHOW A "SCHEME" OF REPEATED PROSECUTIONS TO WARRANT DISMISSAL WITH PREJUDICE.

Instead of grappling with the law that actually governs Rule 48(a) dismissals in this Circuit, the government invents an entirely new rule under which dismissal with prejudice is *only* warranted upon a showing of a government "scheme" to "repeatedly" re-prosecute the defendant. That unsupported interpretation of the law

---

government communications and reports related to Officer 1, USAO polices related to the handling of potentially tainted evidence, communications and underlying reports related to the local sheriff's office complaint regarding Officer 1, documentation showing no other witness was present during the processing conducted by Officer 1, and communications related to the timeline for processing of a new buccal swab.

appears nowhere in this Circuit's precedent or even in the cases the government cites.

Take *Rinaldi v. United States*, 434 U.S. 22, 32 (1977), which the government selectively quotes. Although the Supreme Court in *Rinaldi* noted that the "principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment," which may include "charging, dismissing, and recharging," it goes on to note that Rule 48 may *also* "permit the court to deny a Government dismissal motion" if that motion "is prompted by considerations clearly contrary to the public interest." *Id.* n.15. For that latter proposition, *Rinaldi* favorably cites *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973), which in turn observed both that prosecutorial harassment may include re-charging the defendant at a more advantageous time and that Rule 48(a) awards the court "a role of guarding against abuse of prosecutorial discretion." *See id.*, 497 F.2d at 620. *Rinaldi*'s harassment language is nearly identical to *Ammidown*'s but for the absence of the explicit reference to practical advantage. But practically speaking, *Rinaldi* and *Ammidown* have the same effect, as instances where the government seeks to use dismissal to strategically reposition itself in a future prosecution would fall into *at least* the "charging, dismissing, and recharging" camp of *Rinaldi* (which lists no requirement for how often such recharging must occur), if not also the "clearly contrary to public interest" camp. 434 U.S. at 32 n.15.

The same limited takeaway derives from *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016), which also alludes to the role of the court in

guarding against prosecutorial harassment in the form of bringing charges and then dismissing them. *Id.* To be sure, *Fokker* did not discuss the merits of the with-or-without prejudice inquiry and readily acknowledged that it was *not* grappling with a situation in which the defendant objects to the government's dismissal without prejudice. *Id.* Instead, *Fokker* dealt with a situation in which the district court "denied a joint request by the parties to exclude time pursuant to a [deferred prosecution agreement]," the first time such an action had ever been taken by a federal court. *Id.* at 740. Thus, neither *Fokker* nor *Rinaldi* offer any support for the government's novel legal argument here.

Finding no support in federal case law, the government turns to *Workman v. United States*, 255 A.3d 971, 975 (D.C. 2021). But the government seeks to put far more weight on *Workman* than it can bear. *Workman* did no more than to decline to enact a "flat rule that the government engages in impermissible harassment any time it dismisses an indictment in the hope of later reindicting the defendant under more favorable circumstances." *Id.* That holding is neither here nor there, though, because Mr. Thompson has never argued for such a sweeping rule. Indeed, as Mr. Thompson stressed in his Opposition, it matters not just *what* the government seeks—dismissal without prejudice—but *why*. Def. Opp'n (ECF 70) at 15. As Judge Lamberth referenced in *United States v. Madzarac*, 678 F. Supp. 3d 42, 49 (D.D.C. 2023), there is an important difference between "a situation where the government asks to dismiss based on developing circumstances or legal theories"—such as a witness fleeing the country—and a situation "involving the forbidden governmental

purpose of 'escap[ing] from a position of less advantage in which [the government] found itself *as a result of its own election*'"—which is the situation the government has with its Officer 1 problem here. *Id.* (emphasis added).[2]

At no point does the government's Reply come to terms with this critical distinction. As this Court touched on extensively in its July 10th ruling, the predicament that the government currently faces—its need for DNA retesting on a timeline that could not comport with the original July 20th trial date—is *of its own making*. That fact renders the relief the government seeks from a dismissal without prejudice a true *tactical escape* as Judge Lamberth mentioned—one that would relieve the prosecutorial predicament (a "position of less advantage") that the government finds itself "as a result of its own election." *Id.* And it is that escape to a position of *higher* advantage—through a dismissal and recharging—that this Court's precedent characterizes as prosecutorial harassment. Nothing in *Rinaldi* or *Fokker* undercuts that conclusion.

Finally, the government's attempts to distinguish *Pitts* and *Borges* only further illuminate the weakness of its legal position. As to *Borges*, the relevant inquiry is not whether the government's evidentiary defect has a "definitive path to cure." Gov't Reply at 6. *Borges* never adopted that rule. Instead, *Borges* asked the same question Mr. Thompson asks here: whether dismissal is sought because the government wishes to prosecute later under more advantageous circumstances after creating its own predicament. *See United States v. Borges*, 153 F. Supp. 3d 216, 220

[2] Tellingly, the government entirely fails to address *Madzarac*.

(D.D.C. 2015) ("such a strategy of dismissing a case without prejudice in order to bring it again under more advantageous circumstances is precisely the kind of tactical situation that is prohibited by Rule 48(a) and its progeny") (cleaned up).

As to *Pitts*, the government once again overlooks its own procrastination and lack of due diligence in this case. Indeed, the government's failure to conduct timely forensic testing in *Pitts* is analogous to this case, where the government was aware of the infirmities related to Officer 1 since September 2025. Had government counsel diligently prepared for trial in this case, checked his emails, or timely responded to defense counsel's discovery requests, he would have discovered the problems with Officer 1 in time to conduct re-testing in advance of trial. Yet, as this Court recognized, the government waited until the virtual eve of trial to begin to look for chain of custody documents in response to a months'-old defense request, and even after that discovery waited another three weeks to secure a new buccal swab warrant. The ten-month delay in the government's discovery and attempted rectification of its Officer 1 problem dwarfs the five-month delay in forensic testing in *Pitts*.

## III. PUBLIC INTEREST FAVORS THE FAIR ADMINISTRATION OF JUSTICE AND GUARDING AGAINST THE INVOLVEMENT OF IMPROPER CONSIDERATIONS WHEN SEEKING DISMISSAL.

Finally, the government argues that dismissal without prejudice is warranted for public interest reasons, relying on a three-factor inquiry from *United States v. Karake*, No. 02-00256, 2007 WL 8045732, at *1 (D.D.C. Feb. 7, 2007). As an initial point, the government misquotes the three prongs of the *Karake* inquiry,

as the first prong expressly asks "whether the government is attempting to harass defendants or gain a tactical advantage." *Id.* at *2. Here, the record establishes—and the government does not deny—that the government seeks a tactical advantage in seeking re-prosecution. This Court concluded as much when it found that the government's request for a continuance was motivated by "strategic reasons," not the unavailability of a witness. Hr'g Tr. at 84. Indeed, the government's arguments for why it could not "sponsor" Officer 1 ring hollow in light of its failure to even interview him about his work in this case. It is entirely possible that Officer 1 could have authenticated the buccal swabs taken in this case and testified that he obtained the swabs consistent with policy. Simply put, the government demands that it be allowed to dismiss this case so that it can bring it back later *not* because it *could not* present its case to a jury, but because it hopes for better optics for its evidence. Yet where the government seeks an entirely optional dismissal because of a strategic decision that it would prefer not to call an *available* witness whom the government never attempted to interview or rehabilitate, Rule 48(a) provides no refuge.

Seeking a way out, the government repeats its claim that Rule 48 requires a showing of a "scheme to perpetually keep the Defendant under indictment," but cites no support for that proposition. Gov't Reply at 8. And for the reasons explained in detail in Mr. Thompson's Opposition, which the government does not address, the government's actions here amount to objective harassment under relevant precedent. *See* Def. Opp'n at 14–17. The government, however, fails to grapple with

the fact that its own conduct has landed it in its current predicament (a relevant consideration under the harassment prong, as *Madzarac* describes), and fails to respond to Mr. Thompson's argument that a *third* arrest and prosecution amounts to prosecutorial harassment. Indeed, it is the very charging-dismissing-and-recharging that the government concedes in its reply that equates to prosecutorial harassment.

As to the second factor, the government claims that Rule 48 provides no "out" from the Speedy Trial Act. Once again, the government tries to ascribe a per se "rule" to Mr. Thompson that he has never advanced, while ignoring its own egregious actions in this case. But as the government itself made clear at the July 10, 2026 pre-trial conference, it has always treated dismissal as a fallback option in case its motion to continue were not granted, even double-booking its lead attorney because it knew that it would not proceed to trial on July 20, 2026. Yet the government was content to hold Mr. Thompson under a cloud of arrest and prosecution for more than eighteen months rather than pursue its prosecutorial duties diligently. And at the point that the AUSAs on this case uncovered the Officer 1 problem, they chose not to advance a Speedy Trial Act argument in their motion to continue or seek dismissal without prejudice at an earlier date. While the Speedy Trial Act may typically coexist comfortably with Rule 48, in this situation the government has sought to use Rule 48(a) as a clear escape hatch from its present predicament—an "out" that allows the government to avoid ramifications from its misconduct and dilatory behavior. *See United States v. Hayden*, 860 F.2d

1483, 1488–89 (9th Cir. 1988) (dismissal with prejudice is warranted where a district judge finds "that the government utilized the Rule 48(a) motion as a pretext to bypass his denial of the continuance," which is an act of "bad faith").

For that reason, under the third *Karake* factor, fundamental fairness and the public interest demand dismissal with prejudice.[3] The government acts as if the public interest lies only in adjudicating Mr. Thompson's alleged offense.[4] To the contrary, "Rule 48(a) . . . permits courts faced with dismissal motions to consider the public interest in the *fair administration of criminal justice* and the need to *preserve the integrity of the courts*." *United States v. Adams*, 777 F. Supp. 3d 185, 236 (S.D.N.Y. 2025) (cleaned up). This interest is particularly salient on the facts of this case—where the government has egregiously neglected to abide by its prosecutorial duties while an individual's liberty hangs in the balance. This case involves an indictment from January 2025 concerning conduct from June 2024. The government knew since Mr. Thompson's arrest over two years ago that this case rested on DNA evidence and knew of problems with an essential DNA-related witness since September 2025. Yet the government missed the February pre-trial motions deadline, despite claiming to be preparing for trial; entirely failed to file motions in

[3] The government claims it has not acted with bad faith—without meaningfully explaining why it thinks a showing of bad faith is required—but fails to grapple with its own conduct and the authorities cited by Mr. Thompson to suggest that such conduct *could* be considered bad faith. Def. Opp'n at 16 n.4. For example, courts have found that using a motion to dismiss as a means of avoiding a denial of a continuance can constitute bad faith. *Hayden*, 860 F.2d at 1489.

[4] The government has no response to Mr. Thompson's argument that, as in *Madzarac*, the government's own proffers undermine its claims about the public interest and the seriousness of the offense. *See* Def. Opp'n at 16 n.4.

limine, expert disclosures, and Rule 609 and Rule 404 pleadings at any point; and failed to respond to the defense's discovery and *Brady* requests. And the government continued to push on with its prosecution of Mr. Thompson despite knowing Officer 1's problems and that its prosecution of Mr. Thompson could not proceed to trial without remedying the buccal swab issue. Now the government wishes to avoid any consequence for its actions while preserving the possibility of haling Mr. Thompson into court for a *third* time—claiming that that is a "fair resolution of the circumstances." Gov't Reply at 12. But the public has a strong interest in making sure criminal cases are prosecuted fairly and diligently. Indeed, if the government were correct, it would be difficult to imagine when dismissal *with* prejudice would ever be appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the indictment *with prejudice.*

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
____________________________
ISRA BHATTY
BENJAMIN SCHIFFELBEIN
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500